I'm Stanley Lubin, counsel for Dr. Fleming. Briefly, the facts in this case are very simple at this stage. It's on an appeal from a motion for summary judgment that was granted. Dr. Fleming was offered a position as a contractor physician by the defendants. He accepted the position, communicated that to them, signed the contract. Arrangements were made for him to move from New York to Yuma, Arizona. The defendants then learned from another source that he had sickle cell anemia, assumed that he would be somehow hampered in his work, and withdrew the offer, and in effect breached the contract, withdrew the offer, and withdrew the position. The sole question before the court now is whether a contractor, an independent contractor doctor, is entitled to the protection of Section 504 of the Vocational Rehabilitation Act. That's the basis upon which the district court granted the motion, by ruling that he was not. We contend that Section 504 provides protection to a broader class of individuals than just employees. Our argument, I'm not going to repeat the arguments that were in the briefs. I presume the court has read them, or at least will at some point in time. If we would have assumed, however, for a minute that the ADA, the Americans with Disabilities Act, were never passed, we probably wouldn't be here. Because at that point, if you just go back to just reading the Vocational Rehabilitation Act, Section 504, does not limit itself to employees. It talks about persons who suffer discrimination based on disability from an entity or an individual who is receiving federal monies through whatever federal program they're participating in. And if you stop there, the clinic or the Yuma would be within the scope of those provisions. Correct. Correct, Your Honor. Now, did the passage of the ADA alter that? We submit it did not. What the defendants have argued below, and probably will be arguing here today, it's in their briefing, is that by passing the ADA, somehow it narrowed the class of people to whom Section 504 applies. We submit that that is not the case. Well, we're really only worried about just that one section of the Act, aren't we? Yes. We're only worried about, is it D? Yes, sir. This is the ---- And D was added later on, is that correct? That's part of the ADA, yes. Okay. So in your view, what does the phrase standards refer to? What is it that it's incorporating out of the ADA? I understand that it's not employees, the definition of employees, so what does it include? We submit that what the ADA did was say we're going to extend some of the benefits that disabled individuals have to a broader range of employers or entities, not just employers. For example, it states that the Vocational Rehabilitation Act is limited in its application by setting up responsibilities in entities that receive monies from the federal government. The ADA extends that to all kinds of entities that do business in interstate commerce, not necessarily limited to those who do business with the government. And that's what D does, is it broadens the Rehab Act to all of these other entities? I think the Rehab Act itself does that. What D does is says if you are covered, then the procedural standards of the Vocational Rehabilitation Act, in other words, what constitutes a violation is similar. Okay. So what particular sections of the ADA that you think now are incorporated? The vocational section of the ADA makes it applicable. I'm sorry, which section? I'm sorry? Which sections of the ADA are now made applicable for? It's, I believe, Section 2 of the ADA, which says, in effect, that this is now applicable to entities in interstate commerce. That's the broadening that the ADA did. But I thought you just told me that it doesn't broaden the Rehab Act to cover everybody who's now operating in interstate commerce. No, it covers, what the ADA did was it broadens the Rehab Act's application to any entity that is doing business in interstate commerce. However, the broadening of impact insofar as, say, an entity that is utilizing the services of persons would only apply to employee-employer relationships. Once you find the employer-employee relationship, then the Rehab Act says in the Section D that you quoted a minute ago, sir, then Section D says that the same standards shall apply for what constitutes a disability. However, I read Section A did not have anything to do with employers. That just simply says that any person who is denied services under, in a program receiving federal assistance is covered by the Rehab Act. That's correct. And now if we're going to try and figure out what the standards are, that's what I'm trying to figure out is what does the standards refer to in D? In D. What they're talking about is that. My reading of D is that I don't think that that expands sort of the class of persons now eligible for Rehab Act. No, D does not expand that. The Rehab Act elsewhere expands that in the jurisdictional section, which is the first or second section of the statute, Section 2 of the statute. What D does is it says if you're covered, if the entity is covered, the employer, I'll call it the employing entity so that we can distinguish from employer, employee itself. The employing entity is covered, that is if they're being brought under the ambit of the Act and persons who do business with them are now entitled to the protection of the ADA, then the standard of what constitutes a violation is the same. I think you'll find this in the Wojcicki case. Is UMA a covered entity under Section A? I'm sorry? Is the medical center a program or activity receiving federal financial assistance? We're not dealing with the medical center, sir. We're dealing with a group of doctors, which is a service provided to the medical center by YAMS, which is a group of doctors, all of whom are independently contracted with the child. Are they a program or activity receiving federal financial assistance? Yes. Okay. They do that through their billings. Mr. Lubin? Yes, sir. Judge Gould, I have a question for you. My understanding is that we have a circuit split, a split in the circuits on the issue that's posed here. That might be Sixth Circuit, Eighth Circuit, Tenth Circuit, that it's two to one on the government side of this issue. So what I would like to hear before you're done is your view of the strengths and weaknesses of the different analyses that our sister circuits have adopted. Thank you, Your Honor. Yes. In Wojcicki is the case that goes the other way from the Eighth Circuit. In that case, if you read that case, there's really no analysis in it. The entire holding of that case is on page ‑‑ let me get it out here. It's on page 86. I'm sorry, wrong case. Let me find it. It's on the last page of the decision, which is on page ‑‑ Page 345. 345, where the court says, basically, given the similarity between Title I and the Rehabilitation Act, absent authority to the contrary, we construe both to apply to an employer-employee relationship. That's the sum total of their finding. And they do it based upon the fact that they say that the Rehab Act and the ADA are interchangeable in many respects and basically go to the same purpose. I think that the holding of the Corden and Johnson case, which comes out of the Second Circuit, it's a district court holding, is much more cogent in that it basically says, setting it up a little differently by putting it in ‑‑ by basically using different language in who is entitled to the protections does not mean that the standards are the same. It states that they state there at ‑‑ that's where I had that right page number from. On page 86 and 7 of that decision, that the Rehab Act provides a broader prohibition than one limited to discrimination that takes place in an employment setting. And it also states what the amendment does not state, that the ADA never stated that it was intended to narrow down the number of the class of people who are entitled to the protections of discrimination in connection with performing services for another entity. And it states that the wording is intended to prevent inconsistent obligations when liability exists under both statute. It is not meant to preclude an employer from being subject to the Rehab Act simply because the employer is exempt from the ADA's narrower range. That's pretty much the same thing that I'm arguing here. Here we're not talking about the narrower range, i.e., the number of employees, which the ADA requires of the 15‑employee rule. But here we're saying that it also doesn't mean that it eliminated the contractor. It would be a strange anomaly to say that the ADA, which was intended to broaden the range of protections to a broader class of people for a group and bring another broader group in as obligated, does not mean that they also intended to narrow down who was entitled to the protection of the statute. I realize I'm out of time, Your Honor, and I would like to have a minute, if I might, for rebuttal. Thank you. Counsel? May it please the Court. My name is Sandra Creda, and I represent the defendant, Apple Lee, Yuma Anesthesia Medical Services. On the outset, we disagree with the recitation of the facts, but the only two facts that are at issue here are undisputed, and that is that Dr. Fleming, the appellant, was an independent contractor and that the defendant, Apple Lee, was not an employer, had no employees, and less than 15 independent contractors. Do you dispute that the doctors here are an entity receiving federal financial assistance? Not for purposes of this motion, no, we don't. Okay. That may be litigated at some future point, but for right now, you're conceding that. Exactly. Okay. Exactly. The district court's decision granting summary judgment in favor of the Apple Lee should be upheld because the appellant cannot demonstrate for purposes of his Section 504 employment discrimination claim that he was either an employee or that Yams was an employer, and both of these things are substantive ingredients for a claim for relief under Section 504 in the independent contractor or employee hiring or termination of contract context. Ms. Crennan, Judge Gould with a question for you. It's really the same question I ask your opposing colleague. It's my understanding is we have a split in the federal circuits, and that one circuit, maybe the 10th Circuit, has adopted a reasoning contrary to what you're saying, and two other circuits have given rulings along the lines that you're arguing. And what I'd like to hear, although I'll look at all these cases and the briefs and arguments individually, I'd like counsel to tell me their view about these precedents. Your Honor, Wojcicki is the 8th Circuit case that we cited in our brief, and that case was clearly in our favor, and what the Wojcicki court did, what the 8th Circuit did, was they clearly just applied Section 504D of the Rehabilitation Act and said the standards to be applied are those set forth in Title I of the ADA. Your reading of Section 504 is that D limits A. Only in the employment discrimination context. Section D, then, is a really odd way of limiting the application of A, which is pretty clear and pretty specific. Well, I don't think it necessarily limits A. What I think it does is it sets forth. It's going to knock Dr. Fleming out. Pretty hard to argue that that's not a limitation, at least from Dr. Fleming's perspective, is it? That's correct, and there are very good reasons why that should be the case. I think to answer Judge Gould's question as well, I think those prior circuit court opinions that disagreed with us, I think that those opinions have been superseded by the U.S. Supreme Court's decision in Arbaugh v. E&Y Corporation, in which that court held that the definition of employer in Title VII is not jurisdictional, it's not procedural, but it's a substantive ingredient of a claim for relief under Title VII. And lower courts have held or have applied this reasoning. You don't even get to Arbaugh until you resolve the dilemma of what does Section D do to Section A in Section 504 of the Rehab Act? I think what Section — I think you've begged the question. If Section D means what you and the Eighth Circuit say it means, then Arbaugh might have some meaning for this. But if the Tenth Circuit and Schrader is correct, then Arbaugh has nothing to do with the case. I think the Tenth Circuit's incorrect, because if you take the position of those other courts, what it does is that it picks and chooses without any clear guidance from either the statute or the courts about which specific provisions of Title I apply to employment discrimination claims under the Rehabilitation Act. So if you adopt the appellant's version of the Act, what that says is that certain of the definitional provisions apply, but others don't. And there's no guidance to employers or to business entities that let them know what the standards are, what the requirements are. And consider, I think, what is a very good reason why Section 504D should be interpreted as we argue. Take this scenario, if you would. ABC Anesthesiology enters into a services agreement with XYZ Accounting Firm for the provision of accounting services. And XYZ Accounting's star employee, who does all the work for ABC Anesthesia, becomes disabled. And ABC Anesthesia becomes concerned that XYZ Accounting isn't going to be able to fulfill the contract, so they terminate the contract. Well, XYZ Accounting doesn't have a claim for relief against ABC Anesthesia under the Rehabilitation Act. And the star employee, who is now a former employee, doesn't have a claim against ABC Anesthesia under the Rehabilitation Act. I think what we need to do is look at the appellant, Dr. Fleming. He's an independent contractor. And as an independent contractor, he's a business. And it doesn't matter whether that business is a sole proprietor, whether that business employs 100 people or 1,000 people. He doesn't have a claim for relief for employment discrimination under Section 504. And arguably, a company like that would not have a claim for relief, employment or otherwise, under Section 504 of the Rehabilitation Act. And if you look at him ñ What part of 504 says that its terms are limited to what you're calling employment discrimination? Your Honor, we ñ You've got to be an employee. But what's the specific language of 504 you think that supports that view? Well, Your Honor, to clarify, it's not our position that there are absolutely no circumstances anywhere under which an independent contractor could recover under the Rehabilitation Act. Those circumstances might exist somewhere. They're not before this Court because this is an employment discrimination claim. You can look at the first amended complaint here, which is EOR ñ or the relevant portions are EOR 29 and 30. And the appellant here has claimed that the appellee discriminated against him because it failed to hire him. They refer to the contract throughout the first amended complaint as an employment agreement, and the damages that are sought are back wages and future wages. But to answer your question, if you look at 504, it says that no person shall be subjected to discrimination. A company is not a person. Well, under your theory, a federal recipient can willfully discriminate against independent contractors on the basis of a disability, without any exposure under the Rehabilitation Act. And we know that the Rehabilitation Act applies to schools and patients, I mean, other types of entities. But your reading would wipe out protections for independent contractors. And, you know, I could refuse to hire a, you know, household help or other persons with disabilities solely because they're an independent contractor. And that's the interpretation that you're saying that Title I imposes on 504? Yes, Your Honor. If the application ñ excuse me ñ if the application of the standards of Title I of the ADA to the Rehabilitation Act in this context creates a disfavorable result in which a category of persons that Congress intended to be covered by the Rehabilitation Act are no longer covered, then that issue is best dealt with in a legislative proceeding and not a judicial forum. If Congress wants to correct and clarify its intentions to include independent contractors and corporations such that you couldn't discriminate against a corporation under the Rehabilitation Act, then it knows how to make those amendments and it will do so, just like Congress broadened the application of the ADA recently. What's the flaw in Trader? It simply says that D, you know, doesn't go to the question of who is covered, but rather what conduct is covered. What's the flaw in that analysis and also the Johnson case that opposing counsel mentioned? The flaw in that case is it disregards the plain language of Section 504D and interprets the language, the standards to be applied to these cases as either procedural or jurisdictional and not a substantive, which means that, you know, under the section, maybe, you know, subpart D, subpart E, subpart F might apply, but A, B, and C don't. I think it disregards the plain language of 504D. And when you use the term substantive, what meaning are you attaching to that? The same meaning that the Supreme Court used in the Arbaugh v. E&Y Corporation case. And by substantive, I mean that they are essential elements of a claim for relief, such that if you aren't an employee, you cannot state a claim for employment discrimination under the ADA or the Rehabilitation Act, even if you're an independent contractor because you need to be an employee, and you're not going to be liable unless you are an actual employer in accordance with the definitions set forth in Title I of the ADA. So for those reasons, we respectfully request that you uphold the decision of the district court.  Thank you. Thank you, counsel. Mr. Lubin, you used your time, but we will afford you one minute. Thank you. I appreciate it, Your Honor. Going to the section D situation, I think that's really the core here of how to read it. Counsel states that the plain language was violated by the Tenth Circuit decision and by the Johnson decision. I'd like to take a look at what that language really says. It says very clearly that whether a violation exists shall use the same standard. That's basically what it says. What the Johnson court said was that that amendment states that the standards of the ADA are to be used to determine whether an employer is not to be used to determine whether an employer is covered by the statute. And in that case, they were dealing with the 15-employee employer rule. Here we're dealing with whether an employer or a contractor, I'm sorry, a contracting employer is covered with respect to an independent contractor performing personal services. And what the court concluded in that case was that the wording is intended to prevent inconsistent obligations when liability exists under both statutes and is not meant to preclude an employer from being covered, being subject, rather, to the Rehabilitation Act's coverage simply because the employer is exempt from the ADA's narrower range. That same reasoning applies here. The ADA does not, I'm sorry, the Rehabilitation Act on its face does not exclude contractors. The ADA only covers employer-employee relationships. That language there states, and if applied here, would say that this language does not narrow down the class of people to whom the Rehabilitation Act applies. And that is the clear language. And the Johnson court was unwilling to say that they were going to read into the congressional enactment a narrowing down of the class of people entitled to coverage simply because some people, others, were given a broader range of rights. And that is the difference between the two theories, and for that reason we think that the Eighth Circuit's decision in Wojcicki should not be followed here. Thank you, Your Honors. Thank you, Counsel. We thank both counsel for the argument. Fleming is submitted.
judges: Gould, Bybee, Tymkovich